# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TEZZIE DUNLAP,** | : |
| **Plaintiff** | : |
| | : **CIVIL ACTION NO. 3:19-CV-0658** |
| v. | : |
| | : **(Judge Caputo)** |
| **WILLIAM NICKLOW**, *et al.,* | : |
| **Defendants** | : |

# M E M O R A N D U M

Presently before the Court is Mr. Dunlap's motion for appointment of counsel (ECF No. 2). For the following reasons, the Court will deny the motion without prejudice.

## I. Background

Plaintiff Tezzie Dunlap initiated this civil rights action pursuant to 42 U.S.C. § 1983 with a complaint filed April 7, 2019. He proceeds *pro se* and *in forma pauperis.* Mr. Dunlap alleges that certain Pennsylvania Department of Corrections (DOC) Officials at the Coal Township State Correctional Institution (SCI-Coal Township), in Coal Township, Pennsylvania, failed to protect him from assault from an inmate prison official knew posed a danger to him. (ECF No. 1 at 5.) Upon entering the DOC Mr. Dunlap requested a separation against Jamar Robinson, his co-defendant in a murder charge, after Plaintiff testified against Mr. Robinson at trial. Mr. Robinson received a life sentence. (*Id*.)

On or about April 21, 2017, Mr. Dunlap thought he saw someone resembling Mr. Robinson on SCI-Coal Township's compound. Plaintiff did not alert anyone as to his concerns because he knew there was a separation in place between Mr. Johnson and

himself. On April 23, 2017, while returning from breakfast, Mr. Robinson assaulted Mr. Dunlap. Due to the lack of security staff normally posted along the walkways that day, the assault lasted over five minutes. (*Id*.) Prison officials transported Mr. Dunlap to an outside hospital for treatment of two deep facial lacerations. He continues to suffer from post-traumatic psychological issues. (*Id*. at 7.) Named as Defendants are: William Nicklow, Director of Population Management; Superintendent Thomas McGinley; Deputy Superintendent for Facilities Management Edward Baumbach; and Major of Security Victor Mirarchi. Mr. Dunlap also identified one John Doe defendant, the Shift Commander on the day of the incident. (*Id*. at 6 – 7.)

**II.    Discussion**

Although prisoners have no constitutional or statutory right to appointment of counsel in a civil case, the Court has discretion to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002); *Parham v. Johnson*, 126 F.3d 454, 456 – 57 (3d Cir. 1997); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). "Appointing counsel for an indigent civil litigant is 'usually only granted upon a showing of *special circumstances* indicating the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present facts and legal issues to the court in a complex but arguably meritorious case.'" *Parkell v. Danberg*, 833 F.3d 313, 340 (3d Cir. 2016) (quoting *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984)) (emphasis in original).

"[V]olunteer lawyer time is a precious commodity[,]" *Montgomery*, 294 F.3d at 499, so the decision to recruit counsel for an indigent prisoner should be exercised

"discerningly." *Id.* at 505 n. 10. The Third Circuit Court of Appeals has provided guidance for the exercise of the district court's discretion in this regard. At the threshold, the Court must decide whether the plaintiff's case, "has some arguable merit in fact and law." *Id*. at 499. A court need not appoint counsel "if the indigent's chances of success on the merits are extremely slim." *Id*. at 500 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986)) (internal quotation marks and brackets omitted). If the threshold requirement is met, the Court then considers several factors to determine whether to request counsel for an indigent party. These factors include: (1) Plaintiff's ability to present his own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) Plaintiff's capacity to retain counsel on his own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses. *Tabron*, 6 F.3d at 155 - 57. If the case "appears to have merit" and "most of the aforementioned [*Tabron*] factors have been met," the Third Circuit "instruct[s]" that the district court "should make every attempt to obtain counsel." *Montgomery*, 294 F.3d at 505 (quoting *Parham*, 126 F.3d at 461) (internal quotation marks omitted) (alteration in original).

Mr. Dunlap narrowly defines his Eighth Amendment failure to protect claim under 42 U.S.C. § 1983 to two events: (1) the transfer of an inmate known to pose a threat to him to SCI-Coal Township which lead to his assault; and (2) lack of sufficient security staff in the compound to monitor inmate movement resulting in his prolonged assault by inmate Robinson. The Eighth Amendment requires a prison official "to take reasonable measures to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan* 511 U.S. 825, 833 (1994). While a prison official has a duty to protect prisoners from attacks by

other prisoners, not every injury suffered by a prisoner at the hands of another translates to constitutional liability for the official responsible for the prisoner's safety. *Id.* at 833-34. An inmate making a failure to protect claim has the burden of proof to establish that a prison official both knew of and chose to disregard an "excessive risk to inmate health or safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 837). The United States Court of Appeals for the Third Circuit has further held that the knowledge requirement is subjective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Id*.; *see Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997). Actual knowledge can be proven circumstantially where the general danger was obvious. *Farmer*, 511 U.S. at 842. For example, if the prisoner-plaintiff

> presents evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk."

*Id*. at 842 - 43. Finally, "a defendant can rebut a *prima facie* demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring." *Beers-Capitol*, 245 F.3d at 133.

In the instant case, Mr. Dunlap's Complaint meets the threshold burden of asserting a plausible failure to protect claim. Thus, the Court turns to examine the remaining *Tabron* factors. Mr. Dunlap's ability to present his own case at this point is evident. He is articulate and able to clearly communicate his thoughts and claims of his case to the Court. The

legal issues involved are not complex and narrowly defined.  The Court does not anticipate the degree of factual investigation to be complex given the limited scope of Mr. Dunlap's claims.  There is no reason Mr. Dunlap cannot conduct the necessary discovery to muster the evidence in support of his claims.  Although Mr. Dunlap suggest that security protocols will prevent him from conducting the necessary discovery, it is premature to award counsel on this issue at this stage of the case where the Defendants have not yet answered the Complaint.  However, if discovery problems arise, Mr. Dunlap may file a motion to compel Defendants' responses to his discovery requests or renew his motion for counsel.

Based on the foregoing, it does not appear that Plaintiff will suffer prejudice if forced to prosecute this case on his own. The Court's duty to construe *pro se* pleadings liberally, *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *Riley v. Jeffes,* 777 F.2d 143, 147 – 48 (3d Cir.1985), coupled with Plaintiff's apparent ability to litigate this action and the limited scope of the issues presented militate against the appointment of counsel.  Accordingly, the Court will deny Mr. Dunlap's motion for appointment of counsel.

An appropriate order follows.

**Date:  May 8, 2019**　　　　　　　　　　　　/s/ A. Richard Caputo
　　　　　　　　　　　　　　　　　　　　　　　**A. RICHARD CAPUTO**
　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**