# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TEZZIE DUNLAP, | No. 3:19-CV-0658 |
| Plaintiff, | (Judge Brann) |
| v. | |
| WILLIAM NICKLOW, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION[1]

### APRIL 21, 2020

On April 7, 2019, Tezzie Dunlap, a state inmate, proceeding *pro se* and *in forma pauperis*, filed this action under 42 U.S.C. § 1983 against the following Pennsylvania Department of Corrections (DOC) employees: William Nicklow, Thomas McGinley, Edward Baumbach and Victor Mirarchi.[2]  Mr. Dunlap alleges Defendants failed to protect him from assault by an inmate known to present a threat to his safety.[3]

Presently before the Court is Defendants' unopposed motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and a motion to

---

[1] This matter was re-assigned to the undersigned following the untimely passing of the Honorable A. Richard Caputo.
[2] Doc. 1.
[3] *Id*.

depose Mr. Dunlap.[4]  Also pending are Mr. Dunlap's motion to compel discovery and two motions for appointment of counsel.[5]  For the reasons set forth below, the Court will grant defendants' motion to dismiss and dismiss Mr. Dunlap's complaint.  Mr. Dunlap will be granted leave to file an amended complaint.  The Court will deny his motions for counsel and all pending discovery motions without prejudice to refile them should Mr. Dunlap file a viable amended complaint.

## I. BACKGROUND

The Court accepts the following facts set forth in Mr. Dunlap's complaint as true for the purpose of resolving the instant motion.[6]

Mr. Dunlap testified against his "co-defendant on a murder charge."[7]  Upon his commitment to the DOC, Mr. Dunlap requested SCI-Camp Hill officials place "a separation" in his file to keep his co-defendant, Jamar Robinson, away from him.[8]

On April 21, 2017, while housed at the Coal Township State Correctional Institution (SCI-Coal Township) in Coal Township, Pennsylvania, Mr. Dunlap "saw a person that resembled Robinson here at SCI-Coal Township.  Knowing that there

---

[4]  Docs. 15 and 25.
[5]  Docs. 21-22 and 24.
[6]  When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences [potentially] drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n. 27 (3d Cir. 2010)).
[7]  Doc. 1 at 5.
[8]  *Id.*

was a separation, [Mr. Dunlap] was convinced this was just someone that resembled him." [9]  Mr. Dunlap never advised prison officials of his suspicions.[10]

On the morning of April 23, 2017, upon leaving the inmate dining room, inmate Robinson approached Mr. Dunlap and told him "it's your day to die."[11] Robinson and Mr. Dunlap fought for five minutes before staff members arrived spraying both of them with oleoresin capsicum spray.[12]  Staff initially took Mr. Dunlap to the institution's infirmary and then to an outside hospital.[13]  Mr. Dunlap received thirty stitches to close two deep lacerations to his face.[14]

On May 1, 2017, Mr. Dunlap filed grievance 677601 "based upon staff negligence," and "against the entire Department of Corrections" because he could not "pinpoint who is liable but the entire DOC 'dropped the ball'" when inmate Robinson was transferred to SCI-Coal Township.[15]  Staff investigated the assault and discovered "that neither [Mr. Dunlap] nor inmate Robinson had an active separation from each other."[16]  Staff asked Mr. Dunlap "if [he] knew inmate Robinson had been transferred to Coal Township and [he] stated 'yes'".[17]  When

---

[9]   Id.
[10]  Id. at 16.
[11]  Id. at 5.
[12]  Id.
[13]  Id. at 6.
[14]  Id. at 7.
[15]  Id. at 10 and 15.
[16]  Id. at 16.
[17]  Id.

3

asked "why [he] didn't notify anyone and [Mr. Dunlap] stated 'it was a weekend and there was no one to tell.'"[18] The investigating officer noted that he was unable "to verify the details of [Mr. Dunlap's] classification and why separations were or were not entered at that time, however … staff at [SCI-Coal Township] would have no way to foresee the events that took place without separations being previously entered and [Mr. Dunlap's] inaction when [he] failed to make staff aware of the issue."[19] The DOC's Chief Grievance Officer denied Mr. Dunlap's appeal at final review.[20]

    Mr. Dunlap names William Nicklow, the Director of Population Management, as a defendant "because it is his duty to review all inmates['] records for separations before scheduling them for transfer. Had Robinson's record been reviewed properly, it would have been obvious that there was a separation in place between [Robinson] and [Mr. Dunlap]."[21] Superintendent Thomas McGinley is named as a defendant "because all expectant transfers are ultimately sent to him after whatever process is completed by those working for him. Had he conducted any type of review of this individual, it would have been obvious that Robinson had no business being sent to this facility."[22] Mr. Dunlap named Edward Baumbach, the Deputy Superintendent

---

[18]  *Id.*
[19]  *Id.*
[20]  *Id.* at 20.
[21]  *Id.* at 6.
[22]  *Id.*

for Facilities Management, as a defendant for two reasons. First, as a member of the Program Review Committee (PRC), Mr. Baumbach "is charged with reviewing the files of any inmate being sent to [SCI-Coal Township] from another prison. Had a proper review been conducted, Robinson would have never entered population, and could never have attempted to kill [him]."[23] Second, Mr. Baumbach is responsible "for the management of the facility … includ[ing] … overseeing the guards. Had the [walkway area] been staffed during a major line movement, Robinson would not have been able to attack me for the length of time he did."[24] Victor Mirarchi, the Major of Security, "is named based upon the fact that he is charged with the secure and orderly operation of the facility ... he is responsible for the security review of any inmate entering this facility."[25] Had a "proper review" of Robinson's file been conducted, Mr. Dunlap would not have been assaulted.[26] Mr. Dunlap also names Captain John Doe, the Shift Commander the morning of the assault, as a defendant for failing to assign staff to patrol and monitor the walkway from the dining hall, who would have prevented Robinson's assault of Mr. Dunlap.[27]

---

[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.* at 7.

## II. MOTION TO DISMISS LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) supports the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.[28] "Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[29]

When resolving a Rule 12(b)(6) motion, "a court must consider no more than whether the complaint establishes 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements' of the cause of action."[30] In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief.[31] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167

---

[28] *See* Fed. R. Civ. P. 12(b)(6).
[29] *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).
[30] *Trzaska v. L'Oreal USA, Inc.*, 865 F.3d 155, 162 (3d Cir. 2017) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).
[31] *See Connelly*, 809 F.3d at 787 (citations omitted).

L.Ed.2d 929 (2007)). In deciding a Rule 12(b)(6) motion, the Court may also consider "documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, its subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."[32]

A complaint filed by a *pro se* plaintiff must be liberally construed and "held 'to less stringent standards than formal pleadings drafted by lawyers.'"[33] That said, the complaint still "must contain allegations permitting 'the reasonable inference that the defendant is liable for the misconduct alleged."[34]

Additionally, District Courts must grant *pro se* litigants leave to file a curative amended complaint, even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable of futile.[35] A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.[36]

---

[32] *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citations and internal quotations marks omitted).

[33] *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 596, 30 L.2d 652 (1972)); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).

[34] *Jackson v. Div. of Developmental Disabilities*, 394 F. App'x 950, 951 n. 3 (3d Cir. 2010) (nonprecedential) (quoted case omitted).

[35] See *Estate v. Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014).

[36] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

## III. DISCUSSION

### A. Failure to State an Eighth Amendment Claim

To successfully state a § 1983 claim, a plaintiff must allege: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct complained of deprived the plaintiff of rights, privileges or immunities secured by the laws or the Constitution of the United States.[37] The liability of government officials may not by premised on a theory of *respondeat superior*.[38] "A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."[39] The personal involvement of a defendant in a § 1983 action may be shown "through allegations of personal direction or of actual knowledge and acquiescence."[40]

"[T]he Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials 'a duty to protect prisoners from violence at the hands of other prisoners.'"[41] Prison officials must take reasonable measures "to protect prisoners

---

[37] *See Rehberg v. Paulk*, 566 U.S. 356, 361, 132 S.Ct. 1497, 1501, 182 L.Ed.2d 593 (2012); *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 n. 6 (3d Cir. 2019); 42 U.S.C. § 1983.
[38] *See Jutrowski v. Twp. Of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018).
[39] *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations and quotations omitted).
[40] *Argueta v. U.S. ICE*, 643 F.3d 60, 72 (3d Cir. 2011) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).
[41] *Bistrian v. Levi*, 696 F.3d 352, 366 - 67 (3d Cir. 2012) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)).

from violence at the hands of other prisoners."[42] "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'"[43] However, prison officials do not incur constitutional liability for every injury suffered by a prisoner.[44]

To state a cognizable failure to protect claim, the inmate must show that he is "incarcerated under conditions posing substantial risk of serious harm," and that officials were deliberately indifferent to his health of safety.[45] A prison official is deliberately indifferent if he knows that an inmate faces a substantial risk of serious harm and consciously disregards that risk by failing to take reasonable measures to abate it.[46] The negligent failure to protect an inmate from assault by another prisoner does not rise to the level of an unconstitutional violation.[47]

Here, liberally construing Mr. Dunlap's *pro se* pleading, the Court interprets the Complaint as alleging an Eighth Amendment failure to protect claim. As noted above, Mr. Dunlap names four supervisory-defendants whom he alleges "dropped the ball" when failing to "properly review" inmate Robinson's file before transferring him to SCI-Coal Township. "Had a proper review been conducted of

---

[42] *Farmer*, 511 U.S. at 833, 114 S.Ct. at 1976.
[43] *Id.* at 834, 114 S.Ct. at 1977 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)).
[44] *Id.*
[45] *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977.
[46] *Id.* at 837, 114 S.Ct. at 1979; *see also Beers-Capitol v. Whetzel*, 256 F.3d 120 (3d Cir. 2001).
[47] *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

Robinson's file, it would have prevented him from entering [SCI-Coal Township's] population and attacking [him] with a weapon."[48] Mr. Dunlap's claim against the Defendants is "based upon staff negligence, [he was] assaulted by [his] co-defendant whom [he] had a separation against."[49]

Mr. Dunlap's claim against the named supervisory defendants is subject to dismissal. First, documentation attached to Mr. Dunlap's complaint reveals that prison officials "discovered that neither [Mr. Dunlap] nor inmate Robinson had an active separation from each other."[50] Additionally, Mr. Dunlap was aware of inmate Robinson's presence at the facility more than twenty-four hours in advance of the assault but failed to advise staff of his security concerns. Finally, Mr. Dunlap points to SCI-Camp Hill officials, not defendants, as failing to properly record his separation against inmate Robinson. These facts, construed in the light most favorable to Mr. Dunlap, fail to demonstrate that any of supervisory defendants were aware of the risk inmate Robinson posed to him and that they were deliberately indifferent to that risk.

To the extent Plaintiff alleges the defendants failed to follow DOC policy concerning the screening of inmates prior to transfer for separations as the proximate cause of his injuries, he again fails to demonstrate defendants' actions were

---

[48] Doc. 1 at 7.
[49] *Id.* at 10.
[50] *Id.* at 16.

deliberately indifferent to his safety. Mr. Dunlap states defendants and others "dropped the ball," or were "negligent" when they failed to properly screen inmate Robinson's file in accordance with existing DOC policy prior to transferring him to SCI-Coal Township. However, as noted above, mere negligence is not enough to violate the Eighth Amendment.[51]

Mr. Dunlap's claim that Ed Baumbach, in his role as Deputy Superintendent for Facilities Management, is responsible for "overseeing the guards" and for failing to properly staff the walkway where the assault took place, also fails to state a claim. As noted above, the requisite personal involvement of a defendant cannot be established on the basis of *respondeat superior* alone. Deputy Superintendent Baumbach's "oversight" of staff is insufficient to impose liability on him for the alleged failed staffing patterns where the assault took place or for assigning the specific individuals to the posts between the dining hall and Plaintiff's housing unit.

### B. Shift Commander John Doe[52]

In cases where the plaintiff proceeds *in forma pauperis*, the "officers of the court shall issue and serve all process."[53] Although an inmate plaintiff proceeding *in forma pauperis* may rely on service by a United States Marshal or other court

---

[51] *Davidson*, 474 U.S. at 347, 106 S.Ct. at 670.
[52] To date, Mr. Dunlap has not named the John Doe who was the Shift Commander the day of the assault and whom he claims was personally responsible for that task.
[53] 28 U.S.C. § 1915(d); see also Fed. R. Civ. P. 4(c)(3).

11

appointed person, he is not divested of all responsibilities related to this task. When advised of a problem in accomplishing service, a *pro se* litigant proceeding *in forma pauperis* must "attempt to remedy any apparent service defects of which [he] has knowledge."[54] If the United States Marshal cannot serve a defendant due to the *pro se* plaintiff's "neglect" or "fault," such as failing to provide sufficient information to identify or locate the defendant, and the plaintiff fails to remedy the situation after being put on notice, dismissal of claims against the defendant may be appropriate.[55] In this case, the burden is on Mr. Dunlap to provide enough information to enable the United States Marshal to serve this defendant.

The Court shall direct Mr. Dunlap to identify and provide the Court with the necessary information to effect service on this defendant. If Mr. Dunlap fails to timely provide the Court with the necessary information, the Court will dismiss the John Doe defendant from the action.

### C. Leave to Amend

As stated, Mr. Dunlap's complaint is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) due to his failure to state an Eighth Amendment claim against the named defendants. However, the Court will grant Mr. Dunlap twenty-

---

[54] *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987).
[55] Federal Rule of Civil Procedure 4(m) provides, in part, that, "[i]f a defendant is not served within 90 days after the complaint is filed, the court --- on motion or on its own after notice to the plaintiff --- must dismiss the action without prejudice against that defendant order that service will be made within a specified time." Fed. R. Civ. P. 4(m).

one days to file an amended complaint as to his failure to protect claim and to identify Shift Commander John Doe. If Mr. Dunlap decides to file an amended complaint in this action, he must clearly label it, on the face of the document, "Amended Complaint." It must bear the docket number assigned to this case and must be retyped (double spaced) or legibly rewritten (double spaced) in its entirety, on the court-approved form.[56] In addition, any amended complaint filed by Mr. Dunlap supersedes (replaces) the original complaint already filed. It must be "retyped or reprinted so that it will be complete in itself including exhibits."[57]

Additionally, the Court cautions Mr. Dunlap that his amended complaint must be concise and direct.[58] Each allegation must be set forth in individually numbered paragraphs in short, concise, and simple statements.[59] The allegations in the amended complaint may not be conclusory. Instead, the allegations should be specific enough as to time and place of the alleged violations and must identify the specific person or persons responsible for the deprivation of his constitutional rights and what each defendant did to harm him.[60]

---

[56] In the "Caption" section of the amended complaint, Plaintiff must state the first and last name, to the extent he knows it, of each defendant he wishes to sue. Plaintiff should also indicate whether he intends to sue each defendant in his or her individual capacity, official capacity, or both.
[57] M.D. Pa. LR 15.1; see also *W. Run Student Hous. Assocs. v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013).
[58] *See* Fed. R. Civ. P. 8(d).
[59] Id.; *see also* Fed. R. Civ. P. 10(b).
[60] *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948.

If Plaintiff fails to file an amended complaint on the Court's form within twenty-one days, the Court will dismiss his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

Finally, the Court reminds Plaintiff of his obligation to advise the Court of any change of address.[61]  If unable to correspond with Plaintiff due to a lack of a current address, the Court will deem Plaintiff to have abandoned his lawsuit and will dismiss the action.

### D.   Motion to Compel Discovery

On November 20, 2019, Mr. Dunlap filed a motion to compel Defendants to produce a variety of documents.[62]  He did not file a brief in support of his motion; therefore, the Court deems it withdrawn.[63]

### E.   Mr. Dunlap's Second & Third Motions for Appointment of Counsel[64]

Mr. Dunlap's motions for appointment of counsel in this matter are based on his indigent status, his imprisonment, his difficulty in obtaining discovery from defendants, and his inability to comprehend the rules of court.[65]  Plaintiff's motions for counsel will be denied, without prejudice, for the following reasons.  It is a well-

---

[61] *See* M.D. Pa. LR 83.18.
[62] Doc. 37.
[63] *See* Pa. M.D. Local Rule 7.5.
[64] Judge Caputo denied Mr. Dunlap's first motion for appointment of counsel on May 8, 2019. *See* Doc. 8.
[65] *See* Docs. 22 and 24.

14

established principle that prisoners have no constitutional or statutory right to appointment of counsel in a civil case.[66] Yet, district courts have broad discretionary power to appoint counsel under 28 U.S.C. § 1915.[67] The United States Court of Appeals for the Third Circuit suggests the appointment of counsel for an indigent litigant when circumstances "indicate the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case."[68] A district court is required to consider the threshold question of whether the litigant's case has arguable merit in fact or law. After this criterion is met, a court should consider the following factors:

1. The plaintiff's ability to present his or her own case;

2. The difficulty of the particular legal issues;

3. The degree to which factual investigation will be necessary and the ability of the plaintiff to pursue the investigation;

4. The plaintiff's capacity to retain counsel on his or her own behalf;

5. The extent to which a case is likely to turn on credibility determinations; and,

---

[66] *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997).
[67] *See Montgomery v. Pichak*, 294 F.3d 492, 499 (3d Cir. 2002) (citing *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993)).
[68] *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984).

      6.      Whether the case will require testimony from expert witnesses.

*Montgomery*, 294 F.3d at 499 (citing *Tabron*, 6 F.3d at 155 - 57).

As set forth above, the Court has determined that Mr. Dunlap's complaint fails to state a claim against the Defendants but believes that he may be able to correct the identified deficiencies. Thus, his complaint fails to pass the threshold issue of arguable merit in its present form. Be that as it may, the Court is confident that Mr. Dunlap possesses the ability and skills to file an amended complaint on his own. To date, his filings are clear and articulate. He does not have any difficulty communicating in English. Additionally, the issues he seeks to present are straightforward.

Although Mr. Dunlap proclaims to struggle litigating this matter because of his indigent status and incarceration, he does not suggest what form of difficulties he has encountered due to either. He has access to postage and writing materials. At this juncture, that is primarily what he needs to file an amended complaint. As the Court has granted him leave to file an amended complaint, his lack of familiarity with court procedures does not yet pose an impediment to him proceeding *pro se*. The Court has provided him with our Standard Practice Order[69] to assist him understand his *pro se* obligations in this matter. Mr. Dunlap claims to have had

---

[69] *See* Doc. 18.

trouble obtaining discovery from the Defendants but fails to elaborate on that issue. If Mr. Dunlap has properly served defense counsel with a discovery request and Defendants failed to respond to it, he can file a properly supported motion to compel.[70]

As such, the pending motions for appointment of counsel will be denied at this time, but without prejudice. Should future proceedings demonstrate the need for counsel, the matter can be reconsidered, either *sua sponte* or upon a properly filed motion.

### F. Defendants' Motion to Depose Plaintiff

The Defendants properly sought leave of Court to depose Mr. Dunlap because he is confined in prison.[71] Defendants do not set a time or date for the deposition noting that such proceedings are "currently on hold due to the COVID-19 crisis."[72] Due to the procedural posture of this case, as there is no standing complaint in this matter and it is up to Mr. Dunlap to file an amended complaint, the Court will deny defendants' discovery request as premature. Certainly if Mr. Dunlap files an amended complaint and once Defendants file a response to it, the Court will issue a scheduling order providing the parties with an appropriate period to conduct discovery and setting a dispositive motion deadline.

---

[70] *See* Fed. R. Civ. P. 34, 35 and 37.
[71] *See* Fed. R. Civ. P. 30(a)(2)(B).
[72] Doc. 25.

## IV. CONCLUSION

Defendants' motion to dismiss will be granted due to Mr. Dunlap's failure to state a claim against the named Defendants. The Court will further grant Mr. Dunlap twenty-one days to file an amended complaint. Mr. Dunlap's motion to compel will be denied together with his motions for the appointment of counsel. Defendants' motion to depose Mr. Dunlap will also be denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge