# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TEZZIE DUNLAP, | : Civil No. 3:19-CV-00658 |
| Plaintiff, | : |
| v. | : |
| WILLIAM NICKLOW, *et al.*, | : |
| Defendants. | : Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is a motion to dismiss the amended complaint filed by Defendants William Nicklow, Thomas McGinley, Edward Baumbach, Victor Mirarchi, and Shawn Scicchitano ("Defendants"). (Doc. 41.) Plaintiff Tezzie Dunlap initiated this action after he was seriously injured by another inmate who Dunlap claims was known to pose a threat to his safety. (Doc. 33.) Based on the factual allegations of the amended complaint and attached documents, viewed in the light most favorable to the self–represented Plaintiff, the court finds that Plaintiff has adequately stated an Eighth Amendment claim for deliberate indifference to his safety against Defendants in order to allow the claim to proceed. Defendants will be directed to file an answer to the amended complaint.

### PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Self-represented Plaintiff Tezzie Dunlap ("Plaintiff" or "Dunlap") is a former inmate previously incarcerated at the Coal Township State Correctional

Institution ("SCI–Coal Township") in Coal Township, Pennsylvania.[1] Dunlap filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants failed to protect him from being assaulted by an inmate known to present a threat to his safety. In his complaint, Dunlap named the following Pennsylvania Department of Corrections ("DOC") employees as Defendants: Director of Population Management William Nicklow, Superintendent Thomas McGinley, Deputy Superintendent Edward Baumbach, Major Victor Mirarchi, and Shift Commander John Doe. (Doc. 1.)

On April 21, 2020, the court granted Defendants' motion to dismiss based on Dunlap's failure to state an Eighth Amendment claim and granted Dunlap leave to file an amended complaint and to identify Shift Commander John Doe. (Doc. 27.) Dunlap filed his amended complaint on May 7, 2020. He attached documents relative to the exhaustion of his administrative remedies concerning the events of April 23, 2017.[2] (Doc. 33.) On July 13, 2020, Defendants, now including Shift Commander Scicchitano, filed a motion to dismiss the amended complaint. (Doc.

---

[1] Plaintiff notified the court that as of March 3, 2021, he will be housed at the Kintock Erie Community Corrections Center in Philadelphia, Pennsylvania. *See* Doc. 45.

[2] When considering a motion to dismiss, the court accepts as true all material factual allegations of the complaint and exhibits attached to it and draws all reasonable inferences in the plaintiff's favor. *See Watters v. Bd of Sch. Dirs. of Scranton,* 975 F.3d 406, 412 (3d Cir. 2020).

41.) Dunlap filed an opposition brief, and Defendants filed a timely reply. (Docs. 43, 44.) The motion is now ripe for review.

According to the amended complaint, Dunlap testified against his criminal co-defendant, Jamar Robinson. (Doc. 33, p. 6.)[3] Due to Dunlap's assistance, Robinson was convicted of homicide and received a life sentence. Upon admission to the state prison system at SCI–Camp Hill, Dunlap advised staff at the diagnostic classification center that he needed to be separated from Robinson. (*Id.*)

Beginning in 2008, Dunlap was housed at SCI–Coal Township. On Friday, April 21, 2017, Dunlap thought he saw someone who resembled Robinson at SCI–Coal Township. (*Id.*) At that time, Dunlap believed there was a separation on file with the DOC that prevented Robinson from being housed at the same facility. (*Id.*) Dunlap did not see that person again until Sunday, April 23, 2017. While walking back from the inmate dining hall to his housing unit, Robinson approached Dunlap, stated "it's your day to die," and then hit him in the face. With no staff in sight, the two fought for five minutes before a response team arrived. Staff sprayed both inmates with oleoresin capsicum spray. (*Id.*, p. 7.) Dunlap was taken to an outside hospital for treatment of two deep gashes to his face. (*Id.*)

---

[3] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

Following the assault, Dunlap filed Grievance 677601 "against the entire Department of Corrections" for failing to separate him from Robinson. (Doc. 33–1, p. 1.) Although he could not pinpoint who was responsible, he maintains the DOC "dropped the ball," resulting in him suffering significant physical and mental injuries. (*Id.*) Dunlap's facial injuries required over 30 stitches. (Doc. 33, p. 8.) He does "not eat very often in the chow hall because [he] now realize[s] that those charged with [his] protection are the facilitators of [his] assault." (*Id.*) Dunlap seeks monetary damages.

## JURISDICTION

This court has jurisdiction over Dunlap's suit filed pursuant to 42 U.S.C. § 1983 suit under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Further, venue is appropriate because the action detailed in the amended complaint occurred in the Middle District of Pennsylvania.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

    A complaint filed by a self-represented plaintiff must be liberally construed and "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 - 21 (1972)); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Yet, even a self-represented plaintiff "must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). Self-represented plaintiffs are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014). A complaint that sets forth facts which affirmatively demonstrate that the

plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

## DISCUSSION

Defendants assert that the allegations of Dunlap's amended complaint simply duplicate those presented in his original complaint that were previously found insufficient to assert a viable Eighth Amendment failure to protect claim. As such, they argue his amended complaint is equally deficient. Specifically, they maintain that none of the named defendants were personally involved in Dunlap's failure to protect claim and that his allegations fail to state a failure to protect claim. (Doc. 42, p. 3.) The court will address both arguments.

### A. Dunlap has alleged the Personal Involvement of Each Defendant

Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct, and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs … Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207–08.

According to the amended complaint, Dunlap claims the DOC and each Defendant was aware of his need to be separated from Robinson. It is averred that William Nicklow is responsible for "sending Robinson to SCI-Coal Township." (Doc. 33, p. 7.) Superintendent Thomas McGinley allegedly had the "final look" at Robinson's file and his separations prior to his arrival and had the ability to make "modification[s] if need be." (*Id.*, p. 7.) Dunlap claims Superintendent McGinley "dismissed" the separation in Robinson's file "as nothing" or did not properly review Robinson's file for separations. (*Id.*) He also argues Deputy Baumbach, who is a member of the Program Review Committee, allowed Robinson to enter SCI–Coal Township's population even though there was a separation from him on file. (*Id.*) Major Mirarchi is named as a defendant because "[h]e is charged with the secure and orderly operation of the facility." (*Id.*) Dunlap claims Major Mirarchi is also responsible for "the security review of any inmate entering" the facility and allowed Robinson to enter the population without taking the necessary precautions. (*Id.*) Shawn Scicchitano was the Shift Commander on April 23, 2017. (*Id.*, p. 8.) Dunlap states that Scicchitano had "the duty of overseeing all staff working" the day of the assault that he "failed to adequately provide supervision of inmates" that day. (*Id.*) Accordingly, each named Defendant is alleged to have personal involvement in the events leading up

7

to and surrounding Robinson's assault of Dunlap. Defendants' motion to dismiss based on their lack of personal involvement is denied.

### B. Dunlap's Eighth Amendment Failure to Protect Claim

The Eighth Amendment, which prohibits cruel and unusual punishment, requires prison officials to take reasonable measures "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials must take "reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). However, not every harm suffered by one prisoner at the hands of another amounts to a constitutional violation for the prison officials responsible for the victim's safety. *Farmer*, 511 U.S. at 834.

Eighth Amendment claims have an objective and subjective component. To state a cognizable Eighth Amendment failure to protect claim, a plaintiff must demonstrate that: (1) he was incarcerated under conditions posing substantial risk of serious harm (objective component); (2) the official was deliberately indifferent to that substantial risk (subjective component); and (3) the official's deliberate indifference caused his harm. *Proctor v. James*, 811 F. App'x 125, 128 (3d Cir. 2020); *Farmer*, 511 U.S. at 834–38; *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997)). "[T]he proof necessary to show that there was a substantial risk of harm is less demanding than the proof needed to show that there was a probable risk of

harm." *Mammana v. Fed. Bureau of* Prisons, 934 F.3d 368, 373 (3d Cir. 2019). The subjective component of an Eighth Amendment claim requires a showing that the defendant was deliberately indifferent, the court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." *Hamilton v. Leavy*, 117 F.3d 742, 747 (3d Cir. 1997). "A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved circumstantial evidence." *Id.* In other words, actual knowledge may be inferred in situations where the general danger was obvious. *See Farmer*, 511 U.S. at 842. For instance,

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

*Farmer*, 511 U.S. at 842–43 (quotations omitted).

After reviewing the amended complaint and construing the allegations in the light most favorable to Dunlap, the court concludes that the plaintiff has alleged sufficient facts to allow his Eighth Amendment to proceed. Given the potential for violence in the prison environment between co-defendants when one cooperated with law enforcement, the use of inmate separations enhances the safety of inmates

and staff alike.  Separations are used to identify potential conflicts (for a variety of reasons) between staff and inmates as well as between inmates.  Dunlap alleges his separation from Robinson is documented in his file.  As such, Robinson's presence in SCI–Coal Township's general population posed an objective risk to Dunlap.  Next, this is not the situation of a surprise or random incident; these two inmates had a documented history requiring a separation.  Dunlap claims each Defendant was responsible for either arranging or approving Robinson's transfer to SCI–Coal Township or reviewing his file prior to his transfer to SCI–Coal Township, or his release into the population.  Dunlap alleges that Defendants reviewed Robinson's file and the documented separation from Dunlap but failed to take reasonable steps to keep the two inmates separated.  Whether Dunlap will ultimately prevail on his federal claim is not the issue before the court.  At the motion to dismiss stage, Plaintiff's allegations must be accepted as true.  Therefore, these allegations are sufficient to withstand Defendants' motion to dismiss and state a colorable claim for deliberate indifference to a serious risk to Dunlap's safety against Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the amended complaint is denied. An appropriate order follows.

                                          s/ Jennifer P. Wilson
                                          JENNIFER P. WILSON
                                          United States District Court Judge
Dated: March 30, 2021             Middle District of Pennsylvania